*E-filed 12/9/05*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AU OPTRONICS CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>SHARP CORPORATION, et al.,<br><br>    Defendants. | Case No. 05-80235 Misc. JW (HRL)<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTIONS TO COMPEL DISCOVERY FROM THIRD PARTIES ESS TECHNOLOGY, INC., LSI LOGIC CORPORATION, AND ZORAN CORPORATION |

On September 6, 2005, this court heard AU Optronics' Motions to Compel Discovery from third-parties ESS Technology Inc., LSI Logic Corporation, and Zoran Corporation. Based on the papers submitted and the arguments of counsel, the court issues the following order.[1]

**I.   Background**

This is a miscellaneous action to compel discovery from third parties pursuant to subpoenas issued in this District with respect to a patent infringement action pending in the District of New Jersey ("the underlying action"). AU Optronics (AUO) is suing Sharp for infringement of its "'980 patent," which relates to a system for handling errors in digital audio and video data streams in electronic devices, such as DVD players, camcorders and televisions. Many of the functions of the '980 patent

---

[1] LSI did not file an opposition to this motion, but its position on discovery is discernable from the contacts between counsel that have been provided to the court as well as the representations of LSI's counsel at the hearing.

1    occur in components known as "MPEG decoders."[2]  MPEG decoders, in either hardware or software

2    forms, decode, read, and play video and audio data that has been compressed for storage purposes.

3    　　　　Sharp, in the underlying action, claimed that it does not design or manufacture MPEG

4    decoders.  Instead, it purchases these components from other manufacturers and incorporates them

5    into Sharp products.  Accordingly, in response to several interrogatories and requests for production

6    of documents propounded by AUO, Sharp disavowed any knowledge about the functioning of the

7    MPEG decoder chips used in its products, and claimed not to possess any pertinent technical

8    information or data.

9    　　　　As a result of Sharp's position, AUO obtained subpoenas for technical and non-technical

10   information from several non-party companies.  At least three of those non-parties companies, ESS

11   Technology Inc. (ESS), LSI Logic Corporation (LSI) and Zoran Corporation (Zoran) (the "third-

12   parties") objected to the subpoenas pursuant to Fed. R. Civ. P. 45(c)(2)(B).  AUO now moves to

13   compel production of that information.

14   　　　　The subpoenas issued by AUO were quite broad.  They called for the production of

15   documents relating to a wide variety of third-party products, whether or not they were sold to or used

16   by Sharp.  AUO requested both technical and non-technical information in seven categories: 1)

17   documents showing the structure and function of each relevant product; 2) documents showing how

18   each product synchronizes the presentation of audio and video data in an MPEG data stream based on

19   time stamps or time references; 3) advertising or marketing materials that refer this synchronization

20   function; 4) any agreements between the third-party and Sharp in connection with a relevant product;

21   5) documents showing the terms of the sales of any relevant product to Sharp; 6) communication

22   between the third-party and Sharp in connection with the design or development of any relevant

23   product; and 7) codes or manuals necessary to the interpretation of the documents produced in

24   response to (1) through (6).

25   //

26

27   _____

28   　　　　[2] "MPEG" is an acronym for the "Motion Picture Experts Group," a body that determines industry standards for the electronic presentation of audio and video data.

2

## II. Discussion

### A. Legal Standard

Federal Rule of Civil Procedure 45 governs the issuance and enforcement of non-party subpoenas. "[Rule 45] gives ample discretion to district courts to quash or modify subpoenas causing "undue burden." [The Rule] also affords non-parties special protection against the time and expense of complying with subpoenas." *Exxon Shipping v. U.S. Department of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (internal citations omitted); *see also,* FED. R. CIV. P. 45(c).

Generally, the Federal Rules set out a broad relevancy standard: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). However, courts have jurisdiction to limit discovery under this rule for various reasons, including if the discovery is obtainable from some other source that is more convenient, less burdensome, or less expensive, or if the burden or expense of the proposed discovery outweighs its likely benefit. FED. R. CIV. P. 26(b)(2). This same relevancy standard applies to third-party subpoenas. *See Exxon Shipping*, 34 F.3d at 779; *see also Truswal Sys Corp v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1209-12 (Fed. Cir. 1987).

"Thus, the factors required to be balanced by the [] court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Heat and Control v. Hester Indus.* 785 F.2d 1017, 1024 (Fed. Cir. 1986).

### B. Parties' Arguments

AUO argues that the information sought from ESS, LSI and Zoran is unavailable from any other source, and that the discovery sought falls within the broad relevancy standard of Fed. R. Civ. P. 26(b)(1). AUO claims that the requested technical documents will show how the companies' MPEG decoders synchronize audio and video data streams based on standardized MPEG time stamps and that this "synchronization" feature directly relates to the claims of the '980 patent. In order to understand how the products function, AUO argues that the third-parties must produce data and documentation used by engineers to design and manufacture the products. It claims that such information is available in "source code," "netlists," "hdl code," or "cdl files," and also may be

1  available in "higher level" documents, such as design and functional specifications and data sheets.[3]
2  AUO also requests information on firmware and device drivers because the parameters that these
3  products set will often influence how MPEG decoder chips handle synchronization or correct timing
4  errors in the MPEG data streams. The relevant information about the firmware and device drivers can
5  likely be found in their functional or design specifications or in their source code.

6  As for the requested non-technical information, such as advertising and marketing materials
7  and purchase, supplier, and licensing agreements between the third-parties and Sharp, AUO argues
8  that the information is relevant to the issue of damages. It cites one case, *Georgia Pacific v. United*
9  *States Plywood*, 318 F. Supp. 1116 (S.D.N.Y. 1997), to support this proposition. Specifically,
10  AUO claims that marketing materials may relate to the commercial success of the decoders that
11  allegedly embody the '980 patent and the degree to which such commercial success is attributable to
12  the use of the claimed invention.

13  AUO urges that the third-parties have not adequately demonstrated that the requested
14  discovery implicates trade secrets or confidential business information, or that the discovery subjects
15  them to an undue burden. AUO claims that the production it has received so far from Zoran and LSI
16  lacks the requisite specificity to meet AUO's needs. Some of these documents were data sheets and
17  specifications, which confirm that the products decode MPEG audio and video data streams, but do
18  not discuss how they do it, nor give details on the default settings used in the decoders. ESS has yet to
19  produce any responsive information.

20  In opposition, the third-parties present a host of arguments, two of which are most worthy of
21  discussion here. First, they assert that AUO demands sensitive trade secret information that is not
22  shared outside the companies or without strict legal protection. They argue that engineering data, such
23  as source code, hdl code and netlists, are simply too confidential to produce, and doing so constitutes
24  an undue burden that outweighs the benefits to AUO.

25  They further argue that they have either complied with the subpoena (Zoran, LSI), or intend to
26  comply with the subpoena (ESS), but have questions about whether AUO will be satisfied with the

---

[3] The court understands "high level" documents to be those without extensive technical details, such as operating manuals that may be provided to customers. "Low level" documents, in contrast, are those which contain extremely detailed technical information, such as source code data. A continuum exists in between.

4

sufficiency of their production.[4] They suggest that AUO's "willingness" to accept other types documents in place of source code is disingenuous: every time they produce higher level documents, such as data sheets or functional and design specifications, AUO complains that the production is not sufficient  Moreover, they argue that because AUO only requested the "lowest level" documents as an alternative to other types, AUO cannot claim to have a "substantial need" for them, as required by Rule 45.

### C. Analysis

#### 1. Technical Information

As an initial matter, the general relevance of AUO's discovery requests, under the broad standard of Federal Rules, is not in question. How the third-party products decode and synchronize audio and video data streams in MPEG data streams based on standard time-stamps is directly related to the '980 patent and the infringement suit between AUO and Sharp.[5] However, AUO cannot reasonably seek information beyond what specifically relates to this narrow function, or on products that were not sold to Sharp. Thus, ESS's production should be limited to product numbers ES6629FD, ES6629F, and ES4315F; LSI's production, to the ZIVA-5; and Zoran's, to the Vaddis 3, 4, and 5.

Nonetheless, the production must be sufficiently detailed to permit plaintiff's inquiry, even if it implicates potential trade secret information. AUO and the third-parties completely disagree on what information is required to satisfy AUO's "sufficient to show" language. AUO asserts it does not know how the companies title their technical information, or how the document detail hierarchy works for each third-party—it simply wants the information. The third-parties have taken the position that they do not know what will satisfy AUO; they are trying to comply with the subpoena while still protecting their most secret information. The court suspects that, in fact, AUO will not be satisfied without the

---

[4] Zoran claims that it has produced 1,547 pages of technical documents, including a data sheet (found at Bates # ZC000491-497). It asserts that if AUO and its expert, Dr. Zarki, had adequately reviewed Zoran's production, they would have found the disclosure sufficient. LSI represents that it made the final stages of its production just prior to the hearing and expects AUO to be satisfied. (AUO confirmed receipt of the recent production but did not have an opportunity to review it prior to the hearing.) ESS acknowledges that it has not produced anything, but is poised to do so once an adequate protective order is in place.

[5] The court does not believe that AUO was required to produce preliminary infringement contentions for the third party products before it could serve the subpoenas.

disclosure of perhaps the most sensitive information of the third-parties, and unfortunately, no one has offered a workable middle ground.

Faced with similar circumstances, the Federal Circuit decided that transparent discovery was of paramount importance:

> There is no absolute privilege for trade secrets and similar confidential information. To resist discovery under Rule 26(c)(7), a person must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful. If these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action. The district court must balance the need for the trade secrets against the claim of injury resulting from disclosure. If proof of relevancy or need is not established, discovery should be denied. On the other hand, if relevancy and need are shown, the trade secrets should be disclosed, unless they are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing.

*Heat and Control,* 785 F.2d at 1025 (footnote omitted), citing *Centurion Industries v. Warren Steurer and Assoc.,* 665 F.2d 323, 325-6 (10th Cir.1981).

Here, the third-parties have presented evidence confirming that detailed technical information, i.e. specifications and source code, involves protected trade secrets, the release of which could be damaging to their businesses, and even expose them to liability to others. *See, e.g.,* Tafolla Declaration in Support of ESS's Opposition at 3. However, AUO has met its burden of demonstrating that the requested discovery is both relevant and necessary. *See,* Prince Declaration in Support of AUO's Motion at 8. And, the protective order previously negotiated by ESS and AUO appears to be sufficient to protect the third-parties' concerns.[6] In such a situation, this court favors disclosure.

Accordingly, once a protective order is in place, LSI and ESS and Zoran shall produce the "lowest level" data or documents available (i.e. netlists, hld code, source code, etc.) that show <u>how</u> the relevant MPEG decoders synchronize the presentation of audio and video data in an MPEG data stream based on standard time stamps (including firmware, if applicable).[7]

//

//

---

[6] The parties agree that the disputed language in ¶1 can be amended by changing "shall" to "may."

[7] The production should also include any keys, codes, explanations and/or manuals necessary to the interpretation or understanding of the documents or data produced pursuant to this order.

6

### 2. Non-Technical Information

AUO has not demonstrated that information relating to purchase or supplier agreements, the terms of the sales between Sharp and third-parties, and communication between them were ever sought from Sharp, let alone that Sharp denied possession of them.[8]  It is less burdensome to seek the discovery from an actual party to the litigation, especially when that discovery is equally as likely to be in Sharp's possession as it is in ESS's.

Additionally, AUO has not demonstrated that the third-party advertising or marketing materials are relevant.  The success or profits from third-party products are irrelevant to AUO's suit.  Rather, only the advertising, success, and profits of *Sharp's* products are relevant.  The case cited by AUO, *Georgia Pacific v. United States Plywood*, confirms this position.  In that case, plaintiff successfully sued defendant for patent infringement and the only remaining determination for the court was the amount of damages.  *Georgia Pacific*, 318 F. Supp. at 1117.  Defendant had earned money selling licenses for the infringing product.  *Id.* at 117-18.  Thus, defendant's royalties mirrored what plaintiff would have made from the licenses had defendant not infringed.  *Id.*  The present case is different.  AUO is not suing ESS, LSI or Zoran for licensing an infringing product to Sharp.  Rather, AUO is suing Sharp, and must calculate damages based on Sharp's sales of the infringing products.

Accordingly, LSI, ESS and Zoran are not required to produce any non-technical information.

### ORDER

Based on the discussion above, plaintiff's motions to compel is granted in part:

1) The parties must have stipulated protective orders in place by December 15, 2005.

2) ESS, LSI and Zoran must produce technical data/documents pursuant to this order no later than December 23, 2005.[9]

**IT IS SO ORDERED.**

Dated: 12/9/05                                                         /s/ Howard R. Lloyd
                                                                                HOWARD R. LLOYD
                                                                                UNITED STATES MAGISTRATE JUDGE

---

[8] AUO's admission that it has "moved in New Jersey to compel Sharp to produce additional technical documents" only highlights the fact that it has not moved to compel non-technical documents from Sharp.

[9] The court is advised that discovery is currently scheduled to close on December 31, 2005.  Hence, the short production period.

7

THIS SHALL CERTIFY THAT A COPY OF THIS ORDER WILL BE SENT TO:

| | |
|---|---|
| I. Neel Chatterjee | nchatterjee@orrick.com, kmudurian@orrick.com |
| Mark Fowler | mark.fowler@dlapiper.com, larry.landry@dlapiper.com |
| Maxwell A. Fox | maxwellfox@paulhastings.com, vincentyip@paulhastings.com, sangdang@paulhastings.com, jaychiu@paulhastings.com, huachen@paulhastings.com |
| Terry D. Garnett | terrygarnett@paulhastings.com |
| L. Scott Oliver | soliver@milbank.com, rwheatley@milbank.com, kolivares@milbank.com, msmoot@milbank.com, dluo@milbank.com |
| Michael Gerald Schwartz | michael.schwartz@dlapiper.com, stacy.murray@dlapiper.com |
| Louisa Weix | louisaweix@paulhastings.com |

\* Counsel are responsible for providing copies of this order to co-counsel.

Dated:

             /s/ RNR
          Chambers of Magistrate Judge Lloyd